## Rudy Wiedoeft, Appellee, v. Frank Holton and Company, Appellant.

## Gen. No. 38,546.

Opinion filed December 30, 1936. Rehearing denied January 12, 1937.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, and FREDERICK KULL, of Elkhorn, Wis., for appellant; EDWARD R. JOHNSTON and ALBERT E. JENNER, JR., of Chicago, of counsel.

BENJAMIN H. EHRLICH, of Chicago, for appellee; AARON H. COHN, of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

The subject matter of this controversy came up on a previous appeal from a decree of the superior court finding the issues for plaintiff and rereferring the cause to a master for the purpose of stating an

account between the parties. (*Wiedoeft v. Frank Holton & Co.*, Gen. No. 37,185, not reported in full, but abstracted in 277 Ill. App. 609.) A petition for certiorari was subsequently denied by the Supreme Court of this State. (277 Ill. App. XVIII.) By that decree, and the affirmance thereof, the validity of a 10-year written agreement between plaintiff and defendant company, made November 7, 1927, and the material rights of the parties thereunder, was fully adjudicated, and only the question of an accounting pursuant to the decree remained. No supersedeas was sought or had by defendant, and while the cause was pending here for determination the parties proceeded before the master under the accounting reference. Defendant now seeks to reverse the supplemental decree stating the account between the parties, based upon the master's supplemental report.

The original decree embodied the following material findings: That plaintiff had for many years been a musician of considerable training and experience, proficient in playing the saxophone; that he had long been engaged in giving public exhibitions and had recorded his renditions on discs and records, and had attained great popularity by playing this instrument over the radio and thereby acquired a reputation through his performance, which created a great and popular demand for his services; that he had advised certain changes in the saxophone, resulting in the manufacture by defendant of an improved instrument, known as the "Rudy Wiedoeft Model Saxophone," had popularized the instrument by advertising over the radio and otherwise, and created a demand therefor; that under the contract, then in controversy, defendant had agreed to engage plaintiff for a period of not less than six nor more than 10 weeks in each of the 10 years contracted for, to advertise and sell the model instrument, for which plaintiff was to receive $500 a week

and traveling expenses, and, in addition thereto, certain royalties on the instruments manufactured which substantially embodied any of the changes made by him; that the contract was legal and enforceable and plaintiff had substantially carried out all the provisions thereof required by him to be performed; that defendant engaged him for only six weeks during the first year of the agreement, for which he was paid, but during the subsequent years he received no engagements or remuneration whatever, although he had at all times been ready, willing and able to render the services stipulated; that the Rudy Wiedoeft Model Saxophone was manufactured and sold by defendant until December 1, 1930, when plaintiff's name was omitted therefrom, and thereafter defendant continued to manufacture and sell "practically the same model," under the name "Revelation model"; and that the discontinuance was "a subterfuge in an attempt by defendant to defeat complainant's right to recover the compensation as provided in said contract."

Pursuant to the entry of the original decree, which by its affirmance ultimately established the validity of the agreement and the material rights of the parties thereunder, the cause was rereferred to a master (not the one to whom the original reference was had) to state the account, both as to the employment features of the contract and the claim of plaintiff for royalties due. In due course the master filed his report, defendant's exceptions thereto were overruled by the chancellor, and the supplemental decree here in question was entered, finding that defendant owed plaintiff $23,063.40, some $16,000 of which was held to be due for salary under the agreement and the balance for royalties, interest and costs. Notwithstanding the fact that the first master's report and the original decree found that the contract had not been breached, the second master, who stated the account, recom-

mended recovery under the employment feature of the agreement on the theory of a breach of contract, and defendant assigns this as error.

The points urged as ground for reversal may be classified under two principal headings: (1) the employment feature of the supplemental decree, and (2) the findings relative to royalties due. As to the first of these it is urged that in this State an employee has an election of remedies, and may pursue one of three courses: (1) He may treat the contract as entirely rescinded and recover upon a *quantum meruit* so far as he has performed; (2) he may treat the breach as being an end to the contract for all purposes of performance and sue for a breach thereof, continuing the agreement in force only for the purposes of suit; (3) or he may elect to keep the contract alive for all purposes for the benefit of both parties, hold himself at all times ready and able to perform, and at the end of the time specified for performance bring suit thereon for the sums due thereunder. It is argued that since this action is obviously not based on *quantum meruit* the remaining alternatives were a suit to recover damages for breach, or one on the contract itself on the theory that it had been kept alive; that since these remedies are inconsistent with each other, plaintiff was required to elect which one he chose to pursue; that his election clearly indicates that he sought recovery on the theory that his contract had been kept alive, the pleadings having so stated his position, the case having been tried on that theory, and the master having specifically found, prior to the entry of the original decree, that the contract sued on was not breached. It is urged as a matter of law that as a result of this election of remedies, the finding in the original decree that the contract was not breached, and the consistency with which plaintiff has all through these proceedings maintained that the agreement was

alive and that he sought to recover upon that theory, made it incumbent on plaintiff to show *performance* under the contract in order to receive the stipulated salary, and that the performance shown must be *actual* and not *constructive*. Authorities are cited which defendant's counsel say lead to the conclusion that in cases where an employee cannot prove performance his only recourse is to bring an action for breach of contract. To support this position it is urged that the theory of constructive service, an early doctrine under which an employee, without having actually rendered any services, might hold himself ready, able and willing to perform, and then sue for wages, has been repudiated in most States, including Illinois, and *Doherty v. Schipper & Block,* 250 Ill. 128, 133, is cited as representing the current rule in this State. In this connection it is argued that the second master "realizing the fundamental and inherent weakness of plaintiff's theory of action [that the contract was alive] finds that the doctrine of constructive service is repudiated in this state, and then finds that plaintiff must have intended to exercise the option of suing upon the theory of breach of contract; and he permits a recovery of damages in the sum of $500 per week for six weeks in each year up to May 7, 1934."

There can be no doubt that plaintiff proceeded on the theory that the contract had been kept alive. His counsel not only concedes this to be true, but asserts it in his brief. Inasmuch as one of the masters specifically found that the agreement had not been breached and that finding was later incorporated in the decree, further discussion of the point is unnecessary. But the finding of the master in the last supplemental report that recovery should be had on the theory of a breach, cannot alter or affect the determination of this question in the original decree, and would not justify a reversal of the supplemental decree, for the follow-

ing reasons: The cause was referred to the master for the sole purpose of stating an account. The original decree found the contract to be valid and in force and that plaintiff had fully performed. There remained nothing for the master to do but compute the sum due, and he properly adopted as a basis for his computation the minimum six-weeks period provided in the agreement, which, at $500 a week, amounted to $3,000 each year, and then simply multiplied that sum by the number of years the contract had been in force up to May 7, 1934, when plaintiff made arrangements with another concern. Whatever else the master found, or any theory adopted by him contrary to the provisions of the original decree, pursuant to which the accounting was had, was immaterial.

Authorities relied on by defendant on the question of constructive service are in the main cases where the employee had been discharged. In this cause plaintiff was never discharged, and no such contention can fairly be made; he was in the service of defendant all through the master's hearing and until May 7, 1934. *Doherty v. Schipper & Block,* 250 Ill. 128, was tried on the theory of a rescission of the contract, and is therefore not applicable to this proceeding. *Kelly v. Galbraith,* 186 Ill. 593, is also cited, but it does not help defendant. That was a bill in equity, brought to reform a written instrument, and in that proceeding complainant was allowed to recover certain instalments of rent due under a lease. In so far as the court held that "the relief administered in equity is such as the nature of the case, and the facts as they exist at the close of the litigation, demand," that decision supports plaintiff's rather than defendant's position. After all, plaintiff herein sought to recover whatever was due him in one proceeding, and in view of the fact that no competent evidence was adduced to show a mitigation of damages, the amount recov-

ered would have been identical whether assessed on the theory of a breach or on the theory that the contract had been kept alive. This was not a simple employment agreement. The consideration for plaintiff's performance was more than the stipulated $500 a week; it included royalties to be paid plaintiff on the manufacture of instruments sold as a result of the demand created for the improved saxophone by reason of the contemplated advertising of plaintiff's art and the improvements suggested by him in the manufacture of the instrument. These two features were so inter-related in the contract that one cannot well be separated from the other, and therefore the agreement cannot be treated solely as a separate contract of employment within the authorities cited.

As to the contention that it was incumbent on plaintiff to prove actual performance under the constructive service theory, we think the recital and finding in the original decree is conclusive. That decree found that "complainant has substantially performed all the provisions of the aforesaid agreement by him required to be performed." This was based upon evidence and findings that he had at all times held himself ready, willing and able to comply with the contract, and these findings are conclusive on defendant and can no longer be questioned.

The other ground urged for reversal relates to royalties. Counsel for defendant characterize the consideration of the royalty claims as somewhat complicated, due to the multiplicity of saxophones involved, the multiplicity of their engravings, their various forms and changes, and the relation which plaintiff had with each of them, and they say that "threaded through this mass of names and instruments there runs the first decree and its findings, the allegations of the pleadings, the provisions of the contract, and the findings of the master." Specifically, defendant

seeks to make it appear that this court in making a change in the original decree effected a reversal of the trial court so as to reopen for consideration the question as to which models were to be taken into account, and it contends that the Rudy Wiedoeft "R" model, and the "Revelation" model, contain none of the suggestions of plaintiff and is, therefore, not liable to account. That portion of our opinion which modified the original decree follows:

"The evidence discloses that before either of the contracts was executed, and before Wiedoeft had any business relations with defendant, defendant manufactured and sold a saxophone known as 'Revelation Model' and continued to sell some saxophones of that model upon request of purchasers even after the 'Rudy Wiedoeft Model' began to be manufactured and sold; and that this *old* 'Revelation Model' did not embody any of the changes as made in the 'Rudy Wiedoeft Model,' whilst the *new* or *present* 'Revelation Model' do embody said changes. The language of the portion of the decree mentioned makes no distinction between the *old* and the *new* 'Revelation Models.' It merely says 'under the name Revelation Model.' This language possibly renders said portion of the decree uncertain. It is, however, no ground for a reversal of the entire decree, as urged by defendant's counsel. The language can be modified, and we think that it should be, by the addition of the following words: 'which substantially embodies any of the changes made by Wiedoeft and contained in the Rudy Wiedoeft Model.' " Except for the modification appearing at the end of this paragraph, namely, "which substantially embodies any of the changes made by Wiedoeft and contained in the Rudy Wiedoeft Model," the decree was not in anywise altered, and certainly there was no reversal thereof. We think the accounting on the question of royalties was definitely ascertained in

the original decree, and that the issue is not beset with all the complications urged. The chancellor found and we held that the new "Revelation Model" embodies the changes made in the Rudy Wiedoeft Model, and the modification made by our opinion was to avoid any uncertainty in the decree so as to eliminate from the accounting the *old* "Revelation Model," on which plaintiff had never sought recovery and for which none was allowed. A careful reading of our former opinion, reciting in detail the findings of the master, and the provisions of the decree, justifies this conclusion.

The former adjudication of the rights of the parties under this contract eliminates from further consideration most of the questions raised by defendant. Counsel for defendant still argue, however, that the court ought not to countenance the recovery of royalties based upon a fraudulent contract. The fraud which they refer to was fully argued in the original proceeding, where the principal contention made was that the contract was invalid on grounds of public policy because of the deception practiced on the public by engraving Wiedoeft's name on some of the instruments which he had no part in improving, and they say that this fraud so permeates the entire transaction as to void it "from end to end." Inasmuch as the validity of the contract was the principal question in issue on the first appeal, we cannot understand why counsel again raise the point; it has been fully determined and merits no further consideration.

For the reasons stated herein the supplemental decree of the circuit court should be affirmed, and it is so ordered.

*Decree affirmed.*

John J. Sullivan, P. J., and Scanlan, J., concur.